**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JACOB FREEMAN<br>*Plaintiff*,<br><br>v.<br><br>NAQVI, et al.,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:24-cv-00159 (KAD)<br><br><br><br><br>September 11, 2026 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 58)**

Kari A. Dooley, United States District Judge:

Jacob Freeman ("Plaintiff"), previously a pretrial detainee in the Department of Correction (DOC), commenced this civil rights action pursuant to 42 U.S.C. § 1983 against Dr. Syed Naqvi ("Naqvi") and nurse Hollie Good ("Good"), DOC personnel, alleging deliberate indifference to his medical needs in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff's claims arise out of an injury to his eye, purportedly from chemical exposure. Defendants filed a motion for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies; cannot establish his deliberate indifference claims or alternatively, that they are entitled to qualified immunity. ECF No. 58. Plaintiff opposes the motion. For the reasons set forth below, Defendants' Motion for Summary Judgment is DENIED.

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).

**Facts and Procedural History**

The relevant facts are taken from Defendant's Local Rule 56(a)(1) Statement ("Defs.' SMF"), ECF No. 58-2, and attached exhibits; and Plaintiff's Local Rule 56(a)(2) Counterstatement ("Pl.'s CSMF"), ECF No. 73-2, and attached exhibits.

On July 30, 2022, Plaintiff was using a cleaning solution in a spray bottle to clean the wall of his cell at the MacDougall Walker Correctional Institution ("MWCI"), where he was housed as a pretrial detainee. Defs.' SMF ¶ 1; Pl.'s CSMF ¶ 1. Some of the cleaning solution bounced back and purportedly landed in Plaintiff's right eye. Defs.' SMF ¶ 2; Pl.'s CSMF ¶ 2. Plaintiff asserts that he immediately informed a Corrections Officer ("CO") that he had gotten the chemical in his eye, and that the CO called Medical to relay the same. Pl.'s CSMF ¶ 10. Plaintiff also completed an inmate request form the same day seeking medical attention, writing that "[t]here is something wrong with my right eye. It's red and it feels as if something is in it and every now and then it feels as if something is pushing it out and it hurts when I touch it not painful but it doesn't feel normal it was like this all day it also throbs off and on." Defs.' SMF ¶ 5; Pl.'s CSMF ¶ 5; Defs' Ex 2, ECF No. 58-2, at 69. The form did not include a report that Plaintiff had gotten cleaning

solution in his eye. Defs.' Ex. 2. Plaintiff was not seen by any of the medical staff at MWCI that day. *See* Defs.' SMF ¶ 7.

Plaintiff was first seen by a medical provider on August 1, 2022. Defs.' SMF ¶ 8; Pl.'s CSMF ¶ 10. A note signed by Naqvi on August 1 stated that Plaintiff "needs . . . referral to optometry." Pl.'s CSMF ¶ 8; Pl.'s Ex. 5, ECF No. 78-8. On August 6, Plaintiff's eye was treated at a hospital, and he received follow-up care at the same hospital on August 10. Defs.' SMF ¶¶ 15, 19; Pl.'s CSMF ¶ 15, 20. Good was involved in Plaintiff's transport to the hospital on August 10. Def's SMF ¶ 19.

Nurse Janet Jackson is the health services administrative remedies coordinator at MWCI. Defs,' SMF ¶ 22. As such, she is the keeper of records of inmate health service administrative remedies and related appeals. *Id.* Using Administrative Directive 8.9, an inmate can seek either a review of his medical or mental health treatment or diagnosis, or an inmate can lodge a complaint of misconduct against a medical or mental health provider. *Id.* ¶ 24. Inmates can complete the health services administrative remedies form and deposit it into a locked box to which only the Coordinator has access. Once collected, the Coordinator would assign the request a unique number; issue a receipt to the inmate and log the request into the DOC-wide electronic database. *Id.* ¶ 26. Nurse Jackson avers that her review of the database revealed that between June 1, 2022, and December 31, 2022, Plaintiff filed only one health services administrative remedies form. *Id.* ¶¶ 28–29; Jackson Aff., ECF No. 58-3, ¶ 8–10. Plaintiff denies this averment and testified that he filed multiple grievances that are not reflected in the DOC system. Pl.'s CSMF ¶ 28–29. Further, Nurse Jackson avers that the form Plaintiff did submit was rejected because he did not specify what resolution he was seeking. Defs.' SMF ¶ 30; Jackson Aff. ¶ 12. He was told to resubmit the form once properly completed. Defs.' SMF ¶ 30. Finally, Nurse Jackson avers that there is no

record that Plaintiff resubmitted the form. Defs.' SMF ¶ 32; Jackson Aff. ¶ 14. Plaintiff denies that his request was rejected or that he was told to resubmit this request. Pl.'s CSMF ¶ 30–32.

**Discussion**

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all "available" administrative remedies prior to bringing an action in federal court. 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies, prisoners or pretrial detainees must "complete the administrative review process in accordance with the applicable procedural rules." *Perttu v. Richards*, 605 U.S. 460, 465 (2025) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Such rules are defined not by the PLRA, but by the prison grievance process itself. Here, Administrative Directive 8.9 provides Health Services Review procedures to address two types of issues or claims related to the health care of an inmate: (1) diagnosis and treatment issues and (2) administrative health care issues involving a procedure, practice, policy, or the improper conduct of a health services provider. *See* Administrative Directive 8.9(6)(a). The review procedures for each type of issue are separately outlined in the Directive. *See* Administrative Directive 8.9(6)(c)(i)–(ii).

Defendants first argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies prior to commencing this lawsuit. They rely primarily on the process by which such remedies are tracked and the affidavit of Nurse Jackson. Defendants argue that Plaintiff failed to exhaust his administrative remedies because he only filed one Health Services Administrative Remedy ("HSAR") grievance which was dismissed with direction to refile on the basis that Plaintiff "didn't state a resolution to the problem." They argue that, because Plaintiff never refiled, he necessarily did not exhaust his administrative remedies.

But as discussed above, Plaintiff disputes that he never filed further grievances, both testifying "I know I filed multiple ones because at first they kept trying to deny it," Pl.'s Depo., ECF 58-2 at 53, and providing some documentary evidence that he submitted at least one additional grievance, Pl.'s Ex. 33, ECF No. 73-35; Pl.'s Ex. 34, ECF No. 73-37. And although Defendants assert that there is no database record of any such filings, SMF ¶¶ 26–32, Plaintiff asserts that he filed grievances not reflected in the database. Further, the record in the database itself reveals some inconsistencies. Plaintiff's one undisputedly filed grievance is stamped "RECEIVED AUG 10 2022" while the related record of it lists the "date received" as August 14, 2022. Defs.' Exs. 2–3, ECF No. 58-3 at 15, 17. The database, it would appear, is not an infallible method for accurately tracking inmate requests. Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, there is an issue of material fact as to whether Plaintiff properly exhausted his administrative remedies.

**Deliberate Indifference to Medical Needs**

As a pretrial detainee, Plaintiff's deliberate indifference claim is analyzed under the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In order to establish such a claim, Plaintiff must establish two distinct prongs: (1) an "objective prong" showing that his medical condition is an objectively serious one[1], and (2) a "subjective prong," sometimes referred to as a "mens rea prong," showing that the officer acted with at least deliberate indifference to the plaintiff's medical needs. *See Darnell*, 849 F.3d at 29; *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003). "Deliberate indifference" has been defined to "roughly mean[] 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and

[1] Assessing the objective prong requires analysis of the nature of the claim, i.e. whether the claim derives from a complete lack of treatment, a delay in treatment, or derives from the course of treatment chosen. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). As the Court finds a genuine issue of material fact as to the second prong, it does not further address the objective prong.

disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell*, 849 F.3d at 29 (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)).

Defendants argue that Plaintiff cannot meet his burden as to the second prong because, they assert, Plaintiff never even saw Good for treatment and he merely disagrees with the course of treatment followed by Naqvi. However, as to each argument there remains a factual dispute. For example, Plaintiff testified that Good treated him on August 1 as part of her routine "med calls," Pl.'s Depo, at 25, while Good avers that she did not see him until August 10 when he was being referred to the hospital for follow up care, Good Aff., ECF No. 58-4 ¶¶ 6–7. Although Defendants correctly point out that there is no documentation of any treatment by Good on August 1, nor is there documentary evidence to contradict Plaintiff's testimony. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Thus, when Good first treated Plaintiff, if at all, is a question of fact which largely turns on the parties' respective credibility. The Court does not make credibility determinations when deciding a motion for summary judgment. *See Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).

Likewise, Defendants' argument that Plaintiff's claim is no more than a disagreement as to the course of treatment rests on the premise that neither Good nor Naqvi was aware of the chemical exposure to Plaintiff's eye prior to Plaintiff's being seen at the hospital. Good Aff. ¶ 8; Naqvi Aff., ECF No. 58-5 ¶ 6. But, again, Plaintiff testified that he told each Defendant the injury resulted from cleaning solution getting into his eye. Pl.'s Depo, at 86–87. A reasonable jury could

credit either version of events and thereby conclude that Defendants actually knew of and disregarded Plaintiff's injury.[2] *See Darnell*, 849 F.3d at 29.

Defendants further argue that a jury could not find Defendants acted with deliberate indifference without Plaintiff presenting some expert evidence that their courses of care fell below the standard of care. The Court disagrees. "We have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony." *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994). Although expert testimony may bolster Plaintiff's claim, "the absence of such expert proof does not mandate dismissal of his action where the facts support a finding of deliberate indifference." *Id.*

**Conclusion**

The Court does not herein attempt to identify each and every factual dispute that remains for the jury, and identifies only those that demonstrate that summary judgment is not appropriate. Defendants' motion for summary judgment is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of September 2026.

*<u>/s/ Kari A. Dooley</u>*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

[2] Because there are factual disputes to be resolved as to the substantive claims, those same factual disputes preclude a determination of the question of qualified immunity. "At the summary judgment stage, while a conclusion that an official's conduct 'was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.'" *Nazario v. Thibeault*, No. 3:21-cv-216-VLB, 2022 WL 2358504, at *8 (D. Conn. June 30, 2022) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 135). *See also, Maye v. Vargas*, 638 F. Supp. 2d 256, 262 (D. Conn. 2009) ("Although qualified immunity is a question of law, because [the] issue of reasonableness depends on the facts of the situation, if there is a dispute as to the facts, that must be resolved by the factfinder before qualified immunity can be granted.").